Slip Op. 20-34

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TR INTERNATIONAL TRADING COMPANY,<br><br>       Plaintiff,<br><br>   v.<br><br>UNITED STATES, ET AL.,<br><br>       Defendants. | Before: Mark A. Barnett, Judge<br>Court No. 19-00022 |

## OPINION AND ORDER

[Defendants' motion to dismiss for lack of subject matter jurisdiction is granted.  The partial consent motion to intervene as Defendant-Intervenors is denied as moot.]

Dated: March 16, 2020

John M. Peterson, Neville Peterson LLP, of New York, NY, argued for Plaintiff.  With him on the brief were Lawrence J. Bogard and Michael K. Tomenga.

Justin R. Miller, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for Defendant.  With him on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, L. Misha Preheim, Assistant Director, and Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC.  Of counsel on the brief were Paula S. Smith, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, and Emma T. Hunter, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Justice.

      Barnett, Judge:  In this case, an importer asserts that the product it imports

should be considered a product of India.  The importer contends that its supplier

produces the subject imports in India from an input sourced in India, but of

undetermined country of origin.  U.S. Customs and Border Protection ("CBP" or

"Customs") determined that the supplier's processing of the input did not constitute a

substantial transformation.  In the absence of a substantial transformation by the Indian

supplier and documentation otherwise supporting India as the country of origin, CBP

determined that the subject imports were of Chinese origin and subject to the

antidumping and countervailing duty orders on the same.  The importer seeks to invoke

the court's residual jurisdiction to challenge that determination, and the matter is now

subject to a motion to dismiss for lack of subject matter jurisdiction.

The aforementioned importer, TR International Trading Company ("Plaintiff" or

"TRI"), commenced this action specifically seeking an injunction directing Customs to

reliquidate 17 entries of citric acid imported into the United States from India without

regard to antidumping ("AD") or countervailing ("CVD") duties.  *See generally* Compl. for

Inj. Relief ("Compl."), ECF No. 4.  Plaintiff alleges unlawful action by Customs and the

U.S. Department of Commerce ("Commerce" or "the agency") and asserts three counts

relevant thereto.  Count one alleges, "[o]n information and belief," that Customs

assessed AD/CVD duties on TRI's entries in response to "undisclosed or confidential

instructions from [Commerce]."  *Id.* ¶ 68.  According to TRI, Commerce's alleged

authorization of the assessment of AD/CVD duties "was arbitrary, capricious, [] an

abuse of process," *id.* ¶ 70, and "without observance of procedure required by law," *id.*

¶ 71.  Count two alleges that Customs exceeded its authority when it determined that

TRI's imports of citric acid anhydrous from India were within the scope of certain

AD/CVD orders because such determinations are reserved to Commerce.  *See id.*

¶¶ 72–84.  Count three alleges that Customs misapplied Commerce liquidation

instructions and disregarded procedural requirements to issue notices of action

proposed or action taken "before liquidating TRI's entries" and thereby deprived TRI of

the opportunity to "present[] 'compelling reasons' for Customs to withhold liquidation of

the entries at issue." *Id.* ¶ 94.  As noted, Plaintiff seeks to invoke this court's subject

matter jurisdiction pursuant to 28 U.S.C. § 1581(i).  *Id.* ¶ 16.

    Defendant United States ("Defendant" or "the Government") moves to dismiss

TRI's complaint for lack of subject matter jurisdiction pursuant to United States Court of

International Trade ("USCIT" or "CIT") Rule 12(b)(1) or, alternatively, for failure to state

claim upon which relief can be granted pursuant to USCIT Rule 12(b)(6).  Def.'s Mot. to

Dismiss ("Def.'s Mot."), ECF No. 17; *see also* Defs.' Reply in Supp. of Their Mot. to

Dismiss ("Def.'s Reply"), ECF No. 29.[1]  TRI opposes the motion.  Pl. TR Int'l Trading

Co.'s Resp. to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 26.

    Archer Daniels Midland Company, Cargill, Incorporated, and Tate & Lyle

Ingredients Americas LLC (collectively, "Proposed Intervenors") are members of the

domestic industry relevant to the orders on Citric Acid from the People's Republic of

China and seek to intervene as Defendant-Intervenors.  *See* Partial Consent Mot. to

Intervene, ECF No. 9.  Defendant consents to the motion.  *Id.* at 1.  Plaintiff opposes the

motion.  *See* Opp'n to Partial Consent Mot. to Intervene, ECF No. 12.

---

[1] Additional named Defendants include U.S. Department of Commerce, International
Trade Administration; Wilbur Ross, in his official capacity as Secretary of Commerce;
CBP; and Kevin McAleenan, in his official capacity as Commissioner of CBP.  Compl.
¶¶ 12–15.  While the pending motion identifies the Government as the sole movant,
Def.'s Mot. at 1, the reply was filed on behalf of all named Defendants, Def.'s Reply at 1.
This discrepancy is immaterial for purposes of the court's resolution of the pending
motion.

For the following reasons, the court grants Defendant's motion to dismiss for lack of subject matter jurisdiction, does not reach Defendant's alternative basis for dismissal, and denies as moot Proposed Intervenors' motion to intervene.

## STANDARD OF REVIEW

To adjudicate a case, a court must have subject-matter jurisdiction over the claims presented. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Plaintiff bears the burden of establishing subject-matter jurisdiction. *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). When, as here, the plaintiff asserts section 1581(i) jurisdiction, it "bears the burden of showing that another subsection is either unavailable or manifestly inadequate." *Erwin Hymer Group N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019) (citation omitted). Because the pending motion to dismiss rests on the availability of jurisdiction pursuant to other subsections, and therefore challenges the existence of jurisdiction, "the factual allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true." *See Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). To resolve the pending motion, the "court is not restricted to the face of the pleadings" and may, if necessary, "review evidence extrinsic to the pleadings." *Id.* (internal quotation marks and citation omitted).

## BACKGROUND

From July to December 2017, TRI filed 17 entries ("the subject entries") at various U.S. ports of entry of citric acid anhydrous purchased from the Indian manufacturer Posy Pharmachem PVT. LTD ("Posy").  Compl. ¶ 18.  The subject entries identified India as the country of origin.  *Id.* ¶ 19.  TRI filed the subject entries "as type 01 'consumption' entries and not as type 03 'consumption—antidumping (AD)/countervailing duty (CVD)' entries."  *Id.* ¶ 21.  TRI sought "duty free treatment for the merchandise as qualifying goods under the Generalized System of Preferences." *Id.* ¶ 2.

On February 1, 2018, Customs requested from TRI information regarding "value, production, and process quality" for the subject entries.  *Id.* ¶ 24.  On March 19, 2018, TRI responded to the request, documenting, *inter alia*, Posy's purchase and receipt of citric acid monohydrate from suppliers in India and "Posy's processing, in India, of the [citric acid monohydrate] into citric acid anhydrous."  *Id.* ¶ 25; *see also* Def.'s Mot., Attach. B (TR Int'l Trading Co.—Resp. to Request for Information on Citric Acid Anhydrous from India (March 19, 2018)).[2]  TRI averred that "[t]he processing of the citric acid monohydrate into citric acid anhydrous performed by Posy satisfies the new and different product test for a substantial transformation thereby establishing India as the country of origin of the citric acid anhydrous it supplied to TRI."  Def.'s Mot., Attach. B at 6.  On May 16, 2018, CBP extended liquidation of the subject entries.  Compl. ¶ 33; *see*

---

[2] TRI alleges that the country of origin of the citric acid monohydrate Posy sourced from Indian suppliers is unknown.  Compl. ¶ 28.

*also* 19 U.S.C. § 1504(b)(1) (permitting extension of the time period for liquidation when CBP requires additional information "for the proper appraisement or classification of the imported or withdrawn merchandise").

On October 3, 2018, CBP informed TRI (via email to TRI's counsel) ("CBP's 10/3/18 Email") that its review of TRI's entries had been transferred to CBP's Pharmaceuticals, Health & Chemicals Center for Excellence and Expertise ("the PCEE").  Compl. ¶ 34; *see also* Def.'s Mot., Attach. A at 1 (Email from Lori J. Kreidermacher-Carter, Senior Import Specialist, PCEE, CBP, Port of Chicago, to M. Tomenga, Esq., Neville Peterson, LLP (Oct. 3, 2018)).  In the email, the PCEE official explained that, as of September 6, 2018, she had not received TRI's response to CBP's February 1, 2018 request for information and, thus, on September 6, 2018, CBP had issued a Notice of Action to TRI on CBP Form 29 setting the entries for liquidation. Def.'s Mot., Attach. A at 1.  The PCEE official directed TRI's counsel to the "attached CBP-29 for reference"; *i.e.*, a copy of CBP's Form 29 Notice of Action, dated September 6, 2018 ("CBP's 9/6/18 Notice").  *Id.*[3]

CBP's 9/6/18 Notice stated:

> As of today, this office has not received a response to the CBP-28 originally sent on 2/1/18 requesting information to support the use of India as the country of origin for the Citric acid on these entries.  *We believe the Citric Acid is of Chinese origin and subject to antidumping and countervailing duties.* The proposed change includes changing the entry to type 03 and adding antidumping case A570-937-000 /156.87% and countervailing case C570-938-000/8.14%.  If this office does not receive

---

[3] The email contained an attachment named "file.pdf."  Def.'s Mot., Attach. A at 1.  TRI "does not allege that Plaintiff's counsel did not receive a copy of [CBP's 9/6/18 Notice]." Pl.'s Opp'n at 16 n.15; *cf.* Compl. ¶ 39 (alleging that TRI—not TRI's counsel—"has never seen [CBP's 9/6/18 Notice]").

documents to support your use of [India] as country of origin within 20
days of this notice, the entries will be changed as proposed.

Def.'s Mot., Attach. A at 2 (emphasis added); *see also* Compl., Ex. 1 (*Citric Acid and

Certain Citrate Salts from Canada and the People's Republic of China*, 74 Fed. Reg.

25,703 (Dep't Commerce May 29, 2009) (antidumping duty orders), and *Citric Acid and

Certain Citrate Salts From the People's Republic of China*, 74 Fed. Reg. 25,705 (Dep't

Commerce May 29, 2009) (notice of countervailing duty order) (together, "the *Citric Acid

Orders*")).[4]

    That day, TRI provided to the PCEE evidence "of delivery of its [March 19, 2018]

response and supplemental responses to the February [request for information] and

requested that the scheduled liquidation be unset."  Compl. ¶ 37.  A different PCEE

official responded "that the scheduled liquidations were unset" and "the PCEE would be

seeking the advice of Customs' Office of Laboratory and Scientific Services [("CBP

Laboratory")] on Posy's processing of the citric acid anhydrous in India."  *Id.* ¶ 40.  The

---

[4] The *Citric Acid* Orders contain identical scope descriptions, which cover, *inter alia*:

> [A]ll grades and granulation sizes of citric acid, sodium citrate, and
> potassium citrate in their unblended forms, whether dry or in solution, and
> regardless of packaging type. The scope also includes blends of citric
> acid, sodium citrate, and potassium citrate; as well as blends with other
> ingredients, such as sugar, where the unblended form(s) of citric acid,
> sodium citrate, and potassium citrate constitute 40 percent or more, by
> weight, of the blend.
> . . .
>
> The scope of [these orders] include[] the hydrous and anhydrous forms of
> citric acid, the dihydrate and anhydrous forms of sodium citrate, otherwise
> known as citric acid sodium salt, and the monohydrate and
> monopotassium forms of potassium citrate.

Compl., Ex. 1.

PCEE official also requested additional information, which TRI provided.  *Id.*  "CBP

suspended liquidation of the 17 TRI entries at issue" on October 3, 2018.  *Id.* ¶ 41.

According to CBP's website, "[t]he stated basis for suspension of liquidation . . . [was]

'Other 1 Suspend.'"  *Id.*  On October 4, 2018, TRI resubmitted its March 19, 2018

response directly to the PCEE.  *Id.* ¶ 42.

On October 24, 2018, TRI learned that the CBP Laboratory had determined that

the "citric acid anhydrous [imported] from India was not considered to be substantially

transformed" as defined by CBP.  *Id.* ¶ 43; *see also id.*, Ex. 6 (copy of the CBP

Laboratory report).  The PCEE relied on this report to conclude that TRI's citric acid

"was not a product of India."  *Id.* ¶ 43.  The PCEE advised TRI that the subject entries

"would be liquidated with the applicable consumption, anti-dumping and countervailing

duties."  *Id.*

On October 31, 2018, TRI requested that the PCEE extend liquidation to permit

TRI time to challenge the PCEE's conclusion as to country of origin.  *Id.* ¶ 46; *see also*

Def.'s Mot., Attach. C (TR Int'l Trading Co.—Request for Ext. of Liquidation of Entries of

Citric Acid Anhydrous from India (Oct. 31, 2018)).  On November 1, 2018, CBP

"changed the basis for suspension of liquidation to 'AD/CVD' Suspend."  Compl. ¶ 48.

On November 2, 2018, the PCEE contacted a CBP National Import Specialist

("NIS") for their views on TRI's assertion that the processing of citric acid monohydrate

into citric acid anhydrous constituted a substantial transformation.  Def.'s Mot., Attach. D

(QUICS Message 44748).  On November 13, 2018, the NIS official indicated his

agreement with the CBP Laboratory's conclusion that the "processing performed does

not result in a substantial transformation." *Id.*  The official stated further that CBP

should encourage TRI to "obtain a scope ruling from [Commerce] on this product if they

disagree." *Id.*

On December 7, 2018, CBP liquidated the subject entries.  Compl., Ex. 2

(summary of liquidated entries).  On December 12, 2018, CBP issued to TRI a CBP

Form 29 Notice of Action ("CBP's 12/12/18 Notice") stating that the subject entries had

been liquidated inclusive of AD and CVD duties in accordance with Commerce's

liquidation instructions pursuant to the *Citric Acid* Orders.  *Id.* ¶ 53, Ex. 7.

TRI commenced this action on February 7, 2019.  Summons, ECF No. 1.  Since

then, TRI has protested CBP's liquidation of its entries.  Def.'s Reply at 4; Pl.'s Opp'n at

2 n.2.  Protest No. 5301-19-100903 covers one entry and Protest No. 4601-19-104102

covers the remaining 16 entries.  Def.'s Reply at 4.  On June 6, 2019, TRI requested

accelerated disposition of Protest No. 5301-19-100903; that protest was subsequently

deemed denied by operation of law 30 days after the date of mailing.  *Id.* at 4 n.3; *see

also* 19 U.S.C. § 1515(b) (2012) (governing requests for accelerated disposition of

protests).[5]  CBP has suspended action on Protest No. 4601-19-104102 in light of this

litigation.  Def.'s Reply at 4 n.3.[6]

On October 16, 2019, the court granted Plaintiff's unopposed motion for oral

argument on the motion to dismiss, and, as proposed by Plaintiff, stayed scheduling the

hearing pending the U.S. Court of Appeals for the Federal Circuit's ("Federal Circuit")

---

[5] Citations to the United States Code are to the 2012 edition.
[6] TRI has appealed Customs' disposition of Protest No. 5301-19-100903 to this court.
*See TR Int'l Trading Co. v. United States*, Court No. 19-cv-00217 (CIT Dec. 23, 2019).

disposition of the Government's request for a panel rehearing or rehearing *en banc* filed

in response to the appellate court's decision in *Sunpreme Inc. v. United States*

("*Sunpreme II*"), 924 F.3d 1198 (Fed. Cir. 2019).  *See* Order (Oct. 16, 2019), ECF No.

31.  The Federal Circuit granted that petition and issued an *en banc* opinion on January

7, 2020.  *See generally Sunpreme Inc. v. United States* ("*Sunpreme III*"), 946 F.3d 1300

(Fed. Cir. 2020).[7]  Plaintiff, Defendant, and Proposed Intervenors filed supplemental

opening and response briefs discussing the relevance of the Federal Circuit's decision

to this case.  *See* Pl.'s Comments on *Sunpreme, Inc. v. United States*, App. Nos. 2018-

1116, -1117, -1118, Jan. 7, 2020, ECF No. 38 ("Pl.'s Suppl. Br."); Def.'s Suppl. Br.

Regarding the [Federal Circuit's] *En Banc* Decision in *Sunpreme Inc. v. United States*

("Def.'s Suppl. Br."), ECF No. 39; Cmts. of Proposed Ints. Regarding the Sunpreme

Decision ("Proposed Ints.' Suppl. Br."), ECF No. 37; Pl.'s Resp. to Def.'s Cmts. on

*Sunpreme III* ("Pl.'s Suppl. Resp. Br."), ECF No. 42; Def.'s Resp. to Pl.'s Cmts. on

---

[7] In *Sunpreme II*, a unanimous panel of the Federal Circuit affirmed Commerce's scope determination that Sunpreme Inc.'s ("Sunpreme") imported solar modules were subject to certain AD/CVD orders.  924 F.3d at 1205–12.  However, a divided panel found that Customs had exceeded its authority when it suspended liquidation based on its interpretation of those orders in the first instance and, thus, Commerce could not lawfully order the continuation of suspension of liquidation in order to apply the agency's scope determination to Sunpreme's entries made prior to Commerce's initiation of the scope inquiry.  *Id.* at 1212–15.  The *Sunpreme III* court vacated the divided panel's opinion and instead concluded that "it is within Customs'[] authority to preliminarily suspend liquidation of goods based on an ambiguous antidumping or countervailing duty order, such that the suspension may be continued following a scope inquiry by Commerce."  946 F.3d at 1303.  The appellate court explained, however, that Customs' initial determination does not "invoke the kind of deference-deserving, boundary-defining authority reserved to Commerce when it interprets or clarifies an order during scope proceedings," *id.* at 1320, and is not "an interpretive act that would modify Commerce's determinations or otherwise impinge upon Commerce's authority to issue and set the scope of duty orders," *id.* at 1321 (internal quotation marks omitted).

*Supreme Inc. v. United States* ("Def.'s Suppl. Resp. Br."), ECF No. 43; Rebuttal Cmts.

of Proposed Ints. Regarding the Sunpreme Decision ("Proposed Ints.' Suppl. Resp.

Br."), ECF No. 41.

   The court heard oral argument on February 25, 2020, Docket Entry, ECF No. 45,

and now rules upon the pending motions.

DISCUSSION

**I.   Subject Matter Jurisdiction**

   The U.S. Court of International Trade, like all federal courts, is a "court[] of limited

jurisdiction marked out by Congress."  *Norcal/Crosetti Foods, Inc. v. United States*, 963

F.2d 356, 358 (Fed. Cir. 1992) (quoting *Aldinger v. Howard*, 427 U.S. 1, 15 (1976)).

The court's jurisdiction is governed by 28 U.S.C. § 1581, *et seq.  See id.*

   Relevant here, section 1581(a) grants the court jurisdiction to review a denied

protest.  28 U.S.C. § 1581(a); 19 U.S.C. § 1515.  Section 1581(c) grants the court

jurisdiction to review Commerce's scope determinations.  28 U.S.C. § 1581(c); 19

U.S.C. § 1516a(a)(2)(B)(vi).  Section 1581(i) grants the court jurisdiction to entertain

"any civil action commenced against the United States, its agencies, or its officers, that

arises out of any law of the United States providing for— . . . (2) tariffs, duties, fees, or

other taxes on the importation of merchandise for reasons other than the raising of

revenue," and "(4) administration and enforcement with respect to the matters referred

to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section."

   "Section 1581(i) embodies a 'residual' grant of jurisdiction[] and may not be

invoked when jurisdiction under another subsection of [section] 1581 is or could have

been available, unless the remedy provided under that other subsection would be

manifestly inadequate." *Sunpreme Inc. v. United States* ("*Sunpreme I*"), 892 F.3d 1186,

1191 (Fed. Cir. 2018) (citation omitted). The scope of the court's jurisdiction pursuant to

28 U.S.C. § 1581(i) (referred to as "(i) jurisdiction") is "strictly limited." *Erwin Hymer*,

930 F.3d at 1374 (citation omitted). Otherwise, the court's (i) jurisdiction would

"threaten to swallow the specific grants of jurisdiction contained within the other

subsections." *Id.* (citation omitted).

## II.   **Parties' Contentions**

The Government contends that TRI had, "depending on the precise nature of its

claims," remedies available in the form of a protest lodged with Customs or a scope

ruling requested from Commerce, Def.'s Mot. at 11, and "TRI cannot through creative

pleading expand the [c]ourt's jurisdiction to cover its claim[s]," *id.* at 16. According to

the Government, claims that CBP made factual errors or misapplied the clear language

of the *Citric Acid* Orders are proper subjects for a Customs protest. *See id.* at 15; Def.'s

Reply at 13; Def.'s Suppl. Br. at 6; Def.'s Suppl. Resp. Br. at 5.

Additionally, the Government contends, TRI could have challenged (and still may

challenge) Customs' substantial transformation analysis and corresponding conclusion

that the subject entries are covered by the *Citric Acid* Orders by requesting a scope

determination from Commerce. Def.'s Mot. at 14–15 (citing *Sunpreme I*, 892 F.3d at

1193–94);[8] *see also* Def.'s Suppl. Br. at 7 (averring that *Sunpreme III* clarified that CBP

---

[8] While *Sunpreme II* and *Sunpreme III* addressed the merits of Commerce's scope
determination and Commerce's ability to order the continuation of CBP's suspension of
liquidation of Sunpreme's entries when the suspension is based on CBP's interpretation

acts within its authority when it determines the applicability of AD/CVD orders and 19

U.S.C. § 1514(b) directs an importer to challenge CBP's determination by seeking a

Commerce determination).  According to the Government, TRI had the opportunity to

pursue a scope ruling because Customs informed TRI that the subject entries were not

considered to be of Indian origin and would be liquidated inclusive of AD/CVD duties

pursuant to the *Citric Acid* Orders well in advance of liquidation.  Def.'s Mot. at 16–17;

*see also* Def.'s Suppl. Resp. Br. at 2–3.  The Government contends that any scope

ruling could have applied to the subject entries because CBP lawfully suspended

liquidation of those entries.  Def.'s Reply at 11; Def.'s Suppl. Resp. Br. at 4.  The

Government contends further that TRI's available remedies were not mutually exclusive

---

of ambiguous orders, *Sunpreme I* addressed the proper jurisdictional basis for
Sunpreme's challenge to CBP's allegedly *ultra vires* action.  Following Customs'
suspension of liquidation of, and request for cash deposits on, Sunpreme's imports,
Sunpreme requested a scope determination from Commerce.  *Sunpreme I*, 892 F.3d at
1190.  Before Commerce initiated a formal scope inquiry, however, Sunpreme
commenced an action before the CIT alleging that Customs had exceeded its authority
by taking those steps pursuant to Customs' interpretation of ambiguous orders.  *Id.*  The
Federal Circuit reversed the CIT's finding that it had (i) jurisdiction to resolve
Sunpreme's claims and held that "Sunpreme was required to exhaust the administrative
remedies available to it in the form of a scope ruling inquiry and scope ruling
determination" before commencing an action before the CIT.  *Id.* at 1192.  While the
Federal Circuit referred to exhausting administrative remedies, it did not suggest that
such alternative, adequate remedies could be waived so as to permit (i) jurisdiction.

and Customs would likely stay any action on a protest pending Commerce's scope

ruling.[9]  Def.'s Mot. at 18.[10]

TRI contends that, notwithstanding the filing of its protests, any Commerce

involvement in the liquidation of the subject entries would mean that "the liquidations are

not subject to protest."  Pls.' Opp'n at 2 n.2 (citing 19 U.S.C. § 1514(b)).  If Commerce

did not direct the liquidations, TRI contends that the court should "waive exhaustion of

the administrative protest" requirement.  *Id.* at 25–26.

TRI further contends that it is not seeking a scope ruling from Commerce, Pl.'s

Opp'n at 4, and, in any event, it lacked the information necessary to request a scope

ruling, *id.* at 19; *see also id.* at 20 (averring that "Commerce's review of applications for

scope rulings are subject to a 'reasonable basis' standard" pursuant to 19 C.F.R.

§ 351.225(f)(3) and Plaintiff "had no reasonable basis to believe that citric acid

anhydrous imported from India was within the scope of the [*Citric Acid* Orders]").

---

[9] At oral argument, the Government averred that Customs has informed TRI that it
would stay its resolution of the pendant protest concerning 16 of the subject entries
pending Commerce's scope ruling.  Oral Arg. at 10:10–10:18 (reflecting the time stamp
from the recording).  The Government noted that the liquidations remain non-final
pursuant to *Thyssenkrupp Steel North America, Inc. v. United States*, 886 F.3d 1215
(Fed. Cir.  2018), and Customs' action on the protest may include consideration of
Commerce's decision.  Oral Arg. at 9:20–9:55; *see also Thyssenkrupp*, 886 F.3d at
1218 (explaining that Customs' "final" assessment of duties at liquidation "is not entirely
'final'" because it is subject to administrative and judicial review).  TRI asserted, without
support, that Commerce will not issue a scope determination applicable to the subject
entries because Commerce has already issued liquidation instructions covering that
time period.  Oral Arg. at 24:10–25:25, 27:00–27:37.
[10] Proposed Intervenors concur with the Government that *Sunpreme I* requires
dismissal of this case and *Sunpreme III* forecloses TRI's allegations concerning
Customs' alleged *ultra vires* suspension of liquidation respecting the subject entries.
Proposed Ints.' Suppl. Br. at 1–2; Proposed Ints.' Suppl. Resp. Br. at 1–2.

According to TRI, CBP never made a "factual determination that [either] the citric acid anhydrous imported from India, [or] the citric acid monohydrate from which it was produced, were of Chinese origin."  *Id.* at 13.  Instead, TRI asserts, Customs maintained an "unsupported belief" as to country of origin that was rendered moot when CBP unset the liquidation, *id.* at 15–16, and the CBP Laboratory's report addressing substantial transformation did not identify a country of origin, *id.* at 18–19.  TRI avers that it did not know that CBP considered the *Citric Acid* Orders to apply to the subject entries until it received CBP's 12/12/18 Notice.  *Id.* at 19.

TRI also contends that any scope determination, if available, would not apply to the subject entries because Commerce had issued instructions directing CBP to liquidate entries subject to the *Citric Acid* Order prior to CBP's suspension of liquidation of the subject entries.  *Id.* at 14, 22–23; Pl.'s Suppl. Br. at 3–6; Pl.'s Suppl. Resp. Br. at 6.  At most, Plaintiff contends, "a scope inquiry submitted by TRI after Customs' November 1, 2018 suspension of liquidation might afford TRI clarity with respect to the scope of the [*Citric Acid*] Orders prospectively from that date," but would not apply to the earlier-entered subject entries.  Pl.'s Suppl. Br. at 6; *see also* Pl.'s Suppl. Resp. Br. at 5 (any scope determination would apply to entries made on or after November 1, 2018, but not before).[11]

---

[11] TRI cited *Sunpreme II* in support of several arguments it made regarding Customs' authority to interpret ambiguous orders.  *See* Pl.'s Opp'n at 3–28.  To the extent those arguments are no longer valid in light of *Sunpreme III*, the court does not consider them.

**III.    TRI Has or Had Available Remedies Pursuant to 28 U.S.C. § 1581(a) and (c) That Were Not Manifestly Inadequate; Thus, the Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction**

It is well settled that "[a] party may not expand a court's jurisdiction by creative pleading."  *Sunpreme I*, 892 F.3d at 1193 (quoting *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006)).  Instead, the court must "look to the true nature of the action . . . in determining jurisdiction of the appeal."  *Id.* (quoting same). The "true nature" of TRI's action is a challenge to Customs' allegedly *ultra vires* assessment of AD/CVD duties associated with the *Citric Acid* Orders and a requested injunction directing CBP to reliquidate the subject entries without regard to AD/CVD duties.  Compl. at 22–23 (Prayer for Relief); *see also* Oral Arg. at 47:15–47:45.  As discussed more fully below, TRI's cause of action must be dismissed for lack of subject matter jurisdiction.

Section 1514 of title 19 distinguishes between the finality of certain "decisions" in subsection 1514(a) and the finality of certain "determinations" in subsection 1514(b). Subsection (a) states:

> Except as provided in subsection (b) of this section, . . . *decisions* of the Customs Service, including the legality of all orders and findings entering into the same, as to—
>  . . .
> (2) the classification and rate and amount of duties chargeable; [or]
> . . .
> (5) the liquidation or reliquidation of an entry
> . . .
> shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade.

19 U.S.C. § 1514(a)(2), (5) (emphasis added).  Thus, factual findings by Customs

regarding a subject import may be protested pursuant to 19 U.S.C. § 1514(a) when "the

scope of the antidumping duty order is unambiguous and undisputed, and the goods

clearly do not fall within the scope of the order."  *Xerox Corp. v. United States*, 289 F.3d

792, 795 (Fed. Cir. 2002); *see also Chemsol, LLC v. United States*, 755 F.3d 1345,

1350 (Fed. Cir. 2014) ("[F]indings related to liquidation . . . merge with the liquidation.")

(quoting *Volkswagen of Am., Inc. v. United States*, 532 F.3d 1365, 1370 (Fed. Cir.

2008)).  In such situations, a scope ruling by Commerce is unnecessary because "the

scope of the order is not in question."  *Xerox*, 289 F.3d at 795 ("[C]orrecting such a

ministerial, factual error of Customs is not the province of Commerce.").

      Subsection (b) addresses the "[f]inality of determinations."  19 U.S.C. § 1514(b).

It states:

> With respect to determinations made under . . . subtitle IV of this chapter
> which are reviewable under section 1516a of this title, *determinations* of
> the Customs Service are final and conclusive upon all persons (including
> the United States and any officer thereof) unless a civil action contesting a
> determination listed in section 1516a of this title is commenced in the
> United States Court of International Trade . . . .

*Id.* (emphasis added).  Subtitle IV, referenced therein, refers to the antidumping and

countervailing duty provisions of the Tariff Act of 1930, as amended.  *See Fujitsu Ten*

*Corp. of Am. v. United States*, 21 CIT 104, 107, 957 F. Supp. 245 (1997), *aff'd sub nom.*

*Sandvik Steel Co. v. United States*, 164 F.3d 596 (Fed. Cir. 1998)).  Section 1516a of

Title 19 provides for judicial review in AD/CVD proceedings, including Commerce scope

determinations.  19 U.S.C. § 1516a(a)(2)(B)(vi).  Thus, the Federal Circuit has

explained that subsection 1514(b) provides CBP the authority to determine "whether

goods fall within the scope of [an AD/CVD] order," which determination is then "final and

conclusive" unless an interested party seeks a scope ruling from Commerce (which

ruling would then be reviewable pursuant to section 1516a).  *Sunpreme III*, 946 F.3d at

1318 (quoting 19 U.S.C. § 1514(b)).[12]

Customs' "statutory responsibility to fix the amount of duty owed on" the subject

entries authorized CBP to determine in the first instance whether the subject entries

were covered by "existing antidumping or countervailing duty orders" and suspend

liquidation based on an affirmative determination.  *Id.* at 1317.  Thereafter, it was up to

TRI to pursue its available administrative remedies prior to seeking recourse before the

court.  *See Norcal*, 963 F.2d at 359 (limitations on the court's (i) jurisdiction "preserve[ ]

the congressionally mandated procedures and safeguards . . . provided in the other

subsections") (citations omitted).  Two such remedies were available, and the court

discusses each, in turn.

---

[12] While *Sunpreme III* did not directly address jurisdictional issues, it is consistent with
precedent establishing that challenges to Customs' determinations regarding the
applicability of AD/CVD orders generally must be resolved through a scope proceeding
before Commerce and, thereafter, judicial review pursuant to 28 U.S.C. § 1581(c).  *See
Sunpreme I*, 892 F.3d at 1193 ("When an importer disputes Customs' application of an
antidumping or countervailing duty order, the proper remedy is for the importer to seek a
scope inquiry from Commerce, the result of which may subsequently be challenged
before the CIT.") (citing 19 U.S.C. § 1514(b)); *Sandvik*, 164 F.3d at 599–602 (affirming
the CIT's dismissal of importers' subsection 1581(a) actions when importers failed to
challenge the applicability of an antidumping duty order before Commerce).  *But cf.
Thyssenkrupp*, 886 F.3d at 1225–27 (distinguishing between a "ministerial" collection
action by CBP, which is not a "decision" pursuant to 1514(a), and a non-ministerial
"decision" by CBP requiring judgment to determine whether "unliquidated entries"
included liquidated entries for which the liquidation was not yet final, and holding that
the latter, non-ministerial decision was protestable notwithstanding that the applicability
of antidumping duties was at stake).

### A.   Customs Protest and Jurisdiction Pursuant to 28 U.S.C. § 1581(a)

TRI has failed to establish that its claims challenging CBP's application of the *Citric Acid* Orders, including claims concerning factual or procedural errors, may not properly be subject of a Customs protest and judicial review pursuant to 28 U.S.C. § 1581(a).  *See* Compl. ¶¶ 28, 56–59, 63–65, 69 (alleging that the citric acid monohydrate input is of "unknown origin"); *id.* ¶ 88 (alleging that Customs misapplied the *Citric Acid* Orders); *id.* ¶ 94 (alleging that Customs failed to issue notices of action proposed or taken); *cf. Xerox*, 289 F.3d at 795 (importer properly protested CBP's misapplication of a duty order when the subject imports "were not used for power transmission" as required by the pertinent scope "and were not constructed with the materials listed in the order"); 19 U.S.C. § 1514(a) (clerical errors, mistakes of fact, or other inadvertencies in a liquidation, as well as decisions as to the "rate and amount of duties chargeable," are final unless a protest is filed or judicial review thereof is obtained).[13]

TRI's argument that a protest proceeding is a non-jurisdictional administrative remedy that the court could waive is incorrect.  *See* Pl.'s Opp'n at 24–28; *cf.* Def.'s

---

[13] The Government suggests that CBP's country of origin determination was "factual" and, thus, amenable to protest.  *See* Def.'s Mot. at 21; Def.'s Reply at 5–6; Def.'s Suppl. Br. at 5.  However, a country of origin determination based on the application of CBP's substantial transformation test to a set of facts is a "a mixed question of fact and law." *CPC Int'l, Inc. v. United States*, 20 CIT 806, 808 n.3, 933 F. Supp. 1093, 1095 n.3 (1996) (characterizing CBP's substantial transformation test used to determine country of origin for purposes of the marking statute as "a mixed question of fact and law"); *see also United States v. Gaudin*, 515 U.S. 506, 512 (1995) (explaining that the application of a legal standard to a set of facts is "commonly called a 'mixed question of law and fact'") (citation omitted); *Campbell v. Merit Sys. Protection Bd.*, 27 F.3d 1560, 1565 (Fed. Cir. 1994) (same).  Commerce—not CBP—is the agency tasked with resolving

Reply at 14.  As stated above, (i) jurisdiction is *unavailable* "when jurisdiction under

another subsection of [section] 1581 is or could have been available, unless the remedy

provided under that other subsection would be manifestly inadequate."  *Sunpreme I*,

892 F.3d at 1191.  Plaintiff offers no persuasive rationale as to why a protest proceeding

is unavailable—indeed, it cannot, given its lodging of two Customs protests.  *See* Pl.'s

Opp'n at 2 n.2.[14]   Plaintiff also fails to persuade that the remedy afforded by a protest

proceeding would be manifestly inadequate.[15]

TRI's argument that the court should stay the action rather than dismiss it in the

event the court requires Plaintiff to pursue its protest remedies "before resolving

definitively the question of whether Commerce directed CBP's action" also lacks merit.

Pl.'s Opp'n at 28[16]; *but see id.* at 27 n.22 (arguing that a stay would be inappropriate).

---

competing arguments concerning the scope and application of AD/CVD orders—which
would include a country of origin determination based on a substantial transformation
analysis of Chinese citric acid monohydrate—prior to judicial review.  *See, e.g.*,
*Sunpreme I*, 892 F.3d at 1192.

[14] TRI's argument that the court should not "require Plaintiff[] to exhaust protest
remedies, and to allow CBP to reconsider, or consider, a decision it had no power or
authority to make in the first place," Pl.'s Opp'n at 26–27, is premised on the since-
overruled holding of *Sunpreme II* that CBP exceeded its authority when it interpreted
ambiguous AD/CVD orders to cover Sunpreme's products, *id.* at 24 (citing *Sunpreme II*,
924 F.3d at 1214).  The argument, therefore, fails.

[15] At the hearing, TRI argued that its remedy under 28 U.S.C. § 1581(a) is manifestly
inadequate because a protest (and judicial review thereof) is an inappropriate vehicle
for determining whether its conversion of citric acid monohydrate into citric acid
anhydrous constitutes a substantial transformation.  Oral Arg. at 45:55–46:57.  Without
prejudice to the court's resolution of TRI's separate protest appeal and claims asserted
therein, TRI's argument does not persuade the court that TRI's only remedy lies in an
action under 28 U.S.C. § 1581(i), but instead supports the Government's argument that
TRI has a remedy pursuant to 28 U.S.C. § 1581(c).

[16] TRI cites three cases in support of this argument.  Pl.'s Opp'n at 28–29 (citing *Blink
Design, Inc. v. United States*, 38 CIT ___, ___, 986 F. Supp. 2d 1348, 1361 (2014);
*Target Corp. v. United States*, 34 CIT 1570, 1574 (2010); and *Am. Signature, Inc. v.*

TRI cannot circumvent statutorily prescribed remedies through its "creative pleading."

*Sunpreme I*, 892 F.3d at 1193 (quoting *Norsk Hydro*, 472 F.3d at 1355); *see also* 19

U.S.C. § 1514(a)–(b).  TRI has an available remedy pursuant to 28 U.S.C. § 1581(a)

and that remedy is not manifestly inadequate.

## B. Commerce Scope Ruling and Jurisdiction Pursuant to 28 U.S.C. § 1581(c)

In addition to the possibility of protesting certain aspects of Customs' liquidation

of the subject entries, TRI has also failed to establish that it could not have challenged

Customs' country of origin by requesting a scope ruling from Commerce and, if

---

*United States* ("*ASI*"), 598 F.3d 816, 828 (Fed. Cir. 2010)).  The cited cases are inapposite.

In *Blink Design*, the court found that although it had jurisdiction over the protest denial, at its heart, the case concerned the seizure of the plaintiff's merchandise, which must be challenged in a federal district court pursuant to 28 U.S.C. § 1356.  986 F. Supp. 2d at 1361.  The court stayed the plaintiff's challenge to the denied protest pending the plaintiff's pursuit of administrative and judicial remedies respecting the seizures because there were underlying deemed exclusions that may have nevertheless required resolution by the CIT.  *Id.*  In contrast, here, the court finds that it lacks subject matter jurisdiction over TRI's claims; thus, dismissal is required.  *Target Corp.* addressed the plaintiff's motion for a preliminary injunction.  34 CIT at 1570. While TRI accurately quotes the court's statement that "the jurisdictional facts which might establish 28 U.S.C. § 1581(a) jurisdiction . . . have not been established" and, "[i]n such an uncertain situation, preservation of remedies is to be favored," Pl.'s Opp'n at 28–29 (quoting *Target Corp.*, 34 CIT at 1573), TRI's quotation lacks context.  The court made the statement in connection with its finding that the plaintiff had shown irreparable harm.  *Target Corp.*, 34 CIT at 1573.  Although the court noted that the precise jurisdictional basis for the plaintiff's challenge to Commerce's liquidation instructions was unclear, there was no doubt that the court had subject matter jurisdiction pursuant to subsection (a), (c), or (i) of 28 U.S.C. § 1581.  *See id.* at 1572–73.  *ASI* likewise addressed a motion for a preliminary injunction and the Federal Circuit, in that case, found that injunctive relief barring liquidation was necessary to preserve the plaintiff's challenge.  598 F.3d at 828–29.  Opinions enjoining liquidation in order to ensure that a plaintiff may obtain the relief afforded by its chosen remedy in no way support TRI's contention that the court must stay an action over which it lacks subject matter jurisdiction.

necessary, judicial review pursuant to 28 U.S.C. § 1581(c).  *See Sunpreme I*, 892 F.3d

at 1193; *cf. Bell Supply Co. v. United States*, 888 F.3d 1222, 1229 (Fed. Cir. 2018)

("Where an imported article is 'from' can be an inherently ambiguous question.").[17]

TRI's arguments regarding the availability of a scope determination are unpersuasive.

TRI asserts that it first learned that CBP considered the subject entries covered

by the *Citric Acid* Orders when it received CBP's 12/12/18 Notice of Action following

liquidation.  Pl.'s Opp'n at 19.  However, at least as of October 3, 2018, TRI was on

notice that CBP considered the subject entries to be of Chinese origin and subject to the

---

[17] *Bell Supply* addressed an importer's challenge to a Commerce scope determination concluding that oil country tubular goods ("OCTG") made from unfinished OCTG from China but finished in third countries were covered by AD/CVD orders on OCTG from China.  888 F.3d at 1224.  Domestic producers had requested the scope ruling following CBP's determination that the third country processing constituted a substantial transformation of the OCTG that conferred a country of origin other than China.  *Id.* at 1225–26.  The importer argued that Commerce must conduct a circumvention inquiry pursuant to 19 U.S.C. § 1677j before imposing AD/CVD duties on products imported from non-subject countries.  *Id.* at 1226.  The Federal Circuit disagreed, holding that Commerce is entitled to apply its substantial transformation analysis to determine country of origin before conducting a circumvention inquiry.  *Id.* at 1229.

According to TRI, *Bell Supply* holds that "CBP has no authority to make a substantial transformation decision for purposes of an AD or CVD order."  Pl.'s Opp'n at 18 (citing *Bell Supply*, 888 F.3d at 1229).  TRI is incorrect; the Federal Circuit did not speak to CBP's authority and, in any event, any such holding would be questionable in light of *Sunpreme III*.  Additionally, *Bell Supply*'s discussion regarding the ambiguous nature of country of origin for purposes of an AD/CVD order supports the conclusion that TRI's challenge to CBP's country of origin determination in this case lies in requesting a scope ruling from Commerce.  *See Bell Supply*, 888 F.3d at 1229 (discussing the ambiguities inherent in determining whether an imported article "assembled from various components" and further processed in a third country may properly be considered "the product of the country in which the [processing] occurred").

Additionally, to the extent that TRI asserted at oral argument for the first time that Commerce may only find Posy's citric acid anhydrous to be merchandise subject to the *Citric Acid* Orders by means of a circumvention inquiry, that position is belied by *Bell Supply*.

*Citric Acid* Orders.  Compl. ¶ 34 (alleging TRI's counsel's receipt of CBP's 10/3/18 Email); Def.'s Mot., Attach. A.[18]  Thereafter, on October 24, 2018, TRI learned that CBP had concluded that the subject entries were "not considered to be substantially transformed in India as defined by Customs and therefore [were] not a product of India," and "would be liquidated with the applicable consumption, anti-dumping and countervailing duties."  Compl. ¶ 43; *see also id.* ¶ 48 (alleging that, on November 1, 2018, CBP "changed the basis for suspension to 'AD/CVD Suspend'").  TRI argues further that the CBP Laboratory "made no determination that the citric acid was from any country other than India" and CBP never identified the applicable AD/CVD orders in its October 24, 2018 communication.  Pl.'s Opp'n at 19.  TRI's attempt to divorce the information provided on October 24, 2018 from the information provided on October 3, 2018 is unpersuasive.  TRI knew or should have known, prior to liquidation, that the subject entries would be liquidated inclusive of AD/CVD duties associated with the *Citric Acid* Orders, and it could have requested a scope ruling.

TRI's reliance on the "reasonable basis" language in Commerce's regulation to assert that it had no reason to believe that its imports of citric acid were within the scope of the *Citric Acid* Orders is unpersuasive.  *See* Pl.'s Opp'n at 20 (citing 19 C.F.R. § 351.225(f)(3)).  The "reasonable basis" language TRI refers to applies to Commerce's

---

[18] Plaintiff's assertion that CBP's 9/6/18 Notice "was provided only *after* CBP agreed on October 3, 2018 to unset the liquidation, and was by then moot," Pl.'s Opp'n at 16 n.15 (emphasis added), is unpersuasive.  According to the Complaint and uncontroverted evidence appended to Defendant's motion, TRI's counsel received CBP's 9/6/18 Notice *before* requesting CBP to unset the liquidations, which request prompted CBP to unset the liquidations.  *See* Compl. ¶¶ 34–37, 40; Def.'s Mot., Attach. A.

preliminary scope rulings, not an applicant's request for a scope ruling.  19 C.F.R.

§ 351.225(f)(3).  The requirements for requesting a scope ruling are found in section

351.225(c)(1) of the regulations and include, "to the extent reasonably available," the

interested party's position and "factual information supporting this position" among other

things.  Thus, an application for a scope determination from TRI could have included

any information within its possession concerning the processing performed in India and

the source of the citric acid monohydrate.  *See* Compl. ¶¶ 25–27, 35 (alleging the

submission of roughly 1,500 pages of information to CBP).

Having concluded that TRI could have requested a scope ruling, the court must

consider whether that remedy was manifestly inadequate.  "[T]o be manifestly

inadequate," a scope ruling request "must be an exercise in futility, or incapable of

producing any result; failing utterly of the desired end through intrinsic defect; useless,

ineffectual, vain."  *Sunpreme I*, 892 F.3d at 1193–94 (quoting *Hartford Fire Ins. Co. v.

United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008)) (internal quotation marks omitted).

This ensures that the administrative remedies prescribed by Congress are preserved

and (i) jurisdiction operates as a residual grant of jurisdiction in limited circumstances.

*See Erwin Hymer*, 930 F.3d at 1374; *Norcal*, 963 F.2d at 359.

TRI argues that Commerce's issuance of liquidation instructions in connection

with the *Citric Acid* Orders means that any scope ruling would not apply to the subject

entries.  *See* Pl.'s Opp'n at 22–23; Pl.'s Suppl. Br. at 4–5.[19]  However, pursuant to

---

[19] TRI argues further that a Commerce scope determination would not result in a
decision judicially reviewable pursuant to 28 U.S.C. § 1581(c) because "Commerce has
no authority to expand an AD/CVD order through a scope proceeding," and "cannot add

Commerce's regulation governing the suspension of liquidation, "[w]hen [Commerce]

conducts a scope inquiry . . . and the product in question is already subject to

suspension of liquidation, that suspension of liquidation will be continued" pending

Commerce's scope determination.  19 C.F.R. § 351.225(l)(1).  If Commerce issues an

affirmative scope ruling, "any suspension of liquidation under paragraph (l)(1) . . . will

continue."  *Id.* § 351.225(l)(3).  When "there has been no suspension of liquidation,"

Commerce will instruct Customs "to suspend liquidation and to require a cash deposit of

estimated duties, at the applicable rate, for each unliquidated entry of the product

entered, or withdrawn from warehouse, for consumption on or after the date of initiation

of the scope inquiry."  *Id.*; *cf. Sunpreme I*, 892 F.3d at 1194 (a scope proceeding was

not manifestly inadequate because "the suspension of liquidation mitigate[d] the long-

term effect of any alleged financial hardship . . . by ensuring the return of cash deposits

pending the merits of its scope dispute").  Thus, it was entirely possible that a scope

determination could have applied to the subject entries.

 TRI suggests, however, that the absence of a *guarantee* that Commerce would

have initiated a scope inquiry prior to liquidation renders a scope determination

manifestly inadequate as a remedy.[20]  *See* Pl.'s Opp'n at 22–23; Oral Arg. at 26:12–

---

the term 'India' to the [*Citric Acid* Orders]."  Pl.'s Opp'n at 23 n.20.  Whether Commerce
has "interpret[ed] an antidumping order so as to change the scope of th[e] order" or "in a
manner contrary to its terms" are issues the court properly may resolve when exercising
jurisdiction pursuant to 28 U.S.C. § 1581(c).  *See Eckstrom Indus., Inc. v. United States*,
254 F.3d 1068, 1072 (Fed. Cir. 2001) (internal quotation marks omitted).

[20] Commerce's regulation affords the agency 45 days from "the date of receipt of an
application for a scope ruling" to "issue a final ruling" or "initiate a scope inquiry."  19
C.F.R. § 351.225(c)(2).

26:40, 38:54–39:10 (asserting that Commerce lacked the time necessary to initiate a

scope inquiry prior to liquidation).  However, a prompt scope ruling request by TRI might

have afforded Commerce time to act prior to liquidation and, thus, a scope

determination was not "*incapable* of producing *any* result" and did not suffer from

"*intrinsic* defect."  *Sunpreme I*, 892 F.3d at 1193 (emphasis added).  Moreover, the

Government has represented that TRI still could pursue a scope determination

applicable to 16 of the subject entries through Customs' staying of its action on the

second protest.  Oral Arg. at 10:10–10:18.  While TRI failed to acknowledge this point, it

is not unusual for Customs to do so.  *Cf. Carbon Activated Corp. v. United States*, 791

F.3d 1312, 1316 (Fed. Cir. 2015) (affirming the absence of (i) jurisdiction and finding

that a protest was an adequate remedy for erroneous liquidations even if Customs

would have delayed acting on the protest pending the availability of the correct rate

pursuant to the USCIT's resolution of litigation challenging Commerce's final results of

an administrative review); *Thyssenkrupp*, 886 F.3d at 1223 & n.3 (providing that so long

as the liquidation of the entries is not final, any changed law (such as the applicability of

an AD/CVD order) may be applied in the direct review of the liquidation either by CBP or

the court).  Accordingly, TRI has not shown that a scope determination was a manifestly

inadequate means of seeking relief—only that TRI is unwilling to pursue it.

In sum, TRI has or had one or more remedies available to it and those remedies

were not manifestly inadequate.  TRI is actively pursuing its remedy pursuant to 28

U.S.C. § 1581(a) and has, thus far, declined to pursue a remedy pursuant to 28 U.S.C.

§ 1581(c).  In these circumstances, the court lacks (i) jurisdiction and this action will be

dismissed pursuant to USCIT Rule 12(b)(1) and the court need not reach Defendant's

alternative argument pursuant to USCIT Rule 12(b)(6).

### CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion to dismiss for lack of subject

matter jurisdiction is **GRANTED**.  The motion to intervene is **DENIED** as moot.

Judgment will be entered accordingly.

/s/      Mark A. Barnett____
Mark A. Barnett, Judge

Dated: March 16, 2020____
       New York, New York