# United States Court of Appeals for the Federal Circuit

_____

**TR INTERNATIONAL TRADING COMPANY, INC.,**
*Plaintiff-Appellant*

v.

**UNITED STATES, UNITED STATES DEPARTMENT OF COMMERCE, INTERNATIONAL TRADE ADMINISTRATION, GINA M. RAIMONDO, SECRETARY OF COMMERCE, TROY MILLER, IN HIS OFFICIAL CAPACITY AS SENIOR OFFICIAL PERFORMING THE DUTIES OF THE COMMISSIONER FOR UNITED STATES CUSTOMS AND BORDER PROTECTION, UNITED STATES CUSTOMS AND BORDER PROTECTION,**
*Defendants-Appellees*

_____

2020-1830
_____

Appeal from the United States Court of International Trade in No. 1:19-cv-00022-MAB, Judge Mark A. Barnett.

_____

Decided: July 14, 2021
_____

JOHN MICHAEL PETERSON, Neville Peterson LLP, New York, NY, argued for plaintiff-appellant. Also represented by LAWRENCE JOSEPH BOGARD, MICHAEL KONRAD TOMENGA, Washington, DC.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendants-appellees. Also represented by JEFFREY B. CLARK, JEANNE DAVIDSON, LOREN MISHA PREHEIM.

WILLIAM MITCHELL PURDY, Office the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce,  Washington, DC, for defendants-appellees United States Department of Commerce, International Trade Administration, Gina M. Raimondo.

PAULA S. SMITH, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY, for defendant-appellee United States Customs and Border Protection.

---

Before PROST*, CHEN, and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

After duties were assessed on its import of citric acid, Appellant TR International Trading Company, Inc. filed suit in the Court of International Trade, asserting jurisdiction under 28 U.S.C. § 1581(i). Because § 1581(i) is a residual grant of jurisdiction and because TRI had other adequate avenues for its claims, we affirm the Court of International Trade's dismissal for lack of jurisdiction.

I

In 2017, TR International Trading Company, Inc. (TRI) filed 17 entries of citric acid with various U.S. ports. The entries identified India as the country of origin, and TRI

---

\*   Sharon Prost vacated the position of Chief Judge on May 21, 2021.

listed Posy Pharmachem PVT. LTD. (Posy) as the manufacturer. Claiming India as the country of origin allowed TRI to file the subject entries as type 01 "consumption" entries, which are not subject to duties, rather than type 03 "consumption—antidumping (AD)/countervailing duty (CVD)" entries. *TR Int'l Trading Co. v. United States*, 433 F. Supp. 3d 1329, 1334 (Ct. Int'l Trade 2020) (*Decision*).

On February 1, 2018, U.S. Customs and Border Protection (Customs) requested information from TRI regarding the 17 entries. On March 19, 2018, TRI responded with documentation of Posy's purchase and receipt of citric acid monohydrate from suppliers in India and Posy's processing of the citric acid monohydrate into citric acid anhydrous. TRI argued that "[t]he processing of the citric acid monohydrate into citric acid anhydrous performed by Posy satisfies the new and different product test for a substantial transformation thereby establishing India as the country of origin of the citric acid anhydrous it supplied to TRI." *Decision*, 433 F. Supp. at 1334 (quoting Def.'s Mot. to Dismiss, Attach. B, No. 1:19-cv-22 (Ct. Int'l Trade 2019), ECF No. 17) (alteration in original). However, TRI admits that the origin of the citric acid monohydrate is unknown. *Id.* at 1334 n.2. Customs extended liquidation of the 17 entries on May 16, 2018. *Id.* at 1334; *see also* 19 U.S.C. § 1504(b)(1) (permitting extension of the time period for liquidation when Customs requires additional information "for the proper appraisement or classification of the imported or withdrawn merchandise").

On October 3, 2018, Customs informed TRI via email that its review of TRI's entries had been transferred to Customs' Pharmaceuticals, Health & Chemicals Center for Excellence and Expertise (PCEE). *Decision*, 433 F. Supp. at 1334. In the email, PCEE stated that it had not received TRI's response to Customs' February 1, 2018 request for information and, thus, on September 6, 2018, Customs had

issued a Notice of Action to TRI setting the entries for liquidation. *Id.* The Notice stated:

> As of today, this office has not received a response to the CBP-28 originally sent on 2/1/18 requesting information to support the use of India as the country of origin for the Citric acid on these entries. *We believe the Citric Acid is of Chinese origin and subject to antidumping and countervailing duties.* The proposed change includes changing the entry to type 03 and adding antidumping case A570-937-000/156.87% and countervailing case C570-938-000/8.14%. If this office does not receive documents to support your use of [India] as country of origin within 20 days of this notice, the entries will be changed as proposed.

*Id.* at 1334–35 (citation omitted) (alterations in original). TRI provided evidence of its March 2018 responses and PCEE responded that the Customs' Office of Laboratory and Scientific Services (Customs' Lab) would consider Posy's processing of the citric acid in India. *Id.* at 1335.

The lab report stated: "The process described is that of drying citric acid to remove solvate water. . . . [T]he name and CAS registry number are changed as a result of this process. However, the character of the product as citric acid is not altered. . . . [B]oth materials are largely suited for the same purposes." J.A. 84. Based on these findings, Customs determined that the product was not substantially transformed.

On October 24, 2018, Customs sent an email to TRI, advising TRI that the citric acid was not substantially transformed and therefore not a product of India. *Decision*, 433 F. Supp. at 1335. Customs also stated that the entries "would be liquidated with the applicable consumption, anti-dumping and countervailing duties." *Id.* (citation omitted).

On October 31, 2018, TRI requested that Customs extend liquidation to permit TRI time to challenge the conclusion as to country of origin. *Id.*

On November 13, 2018, a Customs National Import Specialist agreed with the Customs' Lab conclusion that the processing did not transform the citric acid. *Id.* at 1336. The official suggested TRI obtain a scope ruling from the U.S. Department of Commerce (Commerce) if it disagreed. *Id.*

On December 7, 2018, Customs liquidated the entries, and on December 12, 2018, Customs issued a Notice of Action to TRI stating that the entries had been liquidated according to the *Citric Acid Orders*,[1] which set forth the relevant duties. *Id.*

TRI filed suit in the Court of International Trade (Trade Court) on February 7, 2019, asserting § 1581(i)'s residual grant of jurisdiction. *Id.* Separately, TRI also protested Customs' liquidation of its entries. *Id.* One protest covered a single entry, while another covered the remaining 16 entries. TRI requested accelerated disposition of the first protest, and that protest was deemed denied by operation of law 30 days after the date of mailing. *Id.* Customs suspended action on the larger set of protests in light of this litigation. *Id.* The Trade Court dismissed this suit for lack of jurisdiction because jurisdiction was available under other subsections of § 1581, thereby prohibiting use of residual jurisdiction. *Decision*, 433 F. Supp. at 1337–46.

---

[1]   *Citric Acid and Certain Citrate Salts from Canada and the People's Republic of China*, 74 Fed. Reg. 25,703 (Dep't Commerce May 29, 2009) (antidumping duty orders); *Citric Acid and Certain Citrate Salts from the People's Republic of China*, 74 Fed. Reg. 25,705 (Dep't Commerce May 29, 2009) (notice of countervailing duty order).

II

We review de novo the Trade Court's decisions to grant the government's motion to dismiss for lack of subject matter jurisdiction. *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1359 (Fed. Cir. 2016) (citing *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1345 (Fed. Cir. 1995)). The party invoking the Trade Court's jurisdiction, here the plaintiff, bears the burden of establishing subject matter jurisdiction. *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).

Section 1581(i) is a residual grant of jurisdiction for the Trade Court. Where a plaintiff asserts § 1581(i) jurisdiction, it "bears the burden of showing that another subsection is either unavailable or manifestly inadequate." *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019) (citation omitted); *see also Sunpreme Inc. v. United States* (*Sunpreme I*), 892 F.3d 1186, 1191 (Fed. Cir. 2018) ("Section 1581(i) embodies a 'residual' grant of jurisdiction[] and may not be invoked when jurisdiction under another subsection of [section] 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." (citation omitted)). Otherwise, plaintiffs would be able to circumvent the method that Congress intended for them to bring certain types of claims. *Erwin Hymer*, 930 F.3d at 1374.

Commerce is charged with interpreting the scope of an order, but Customs applies and enforces the order through the assessment and collection of antidumping and countervailing duties. *See Sunpreme I*, 892 F.3d at 1188; *Sunpreme Inc. v. United States* (*Sunpreme III*), 946 F.3d 1300, 1317 (Fed. Cir. 2020). Relevant here, § 1581(a) grants the Trade Court jurisdiction to review a denied protest of a Customs decision. 28 U.S.C. § 1581(a); 19 U.S.C. § 1515. Section 1581(c) grants the Trade Court jurisdiction to review Commerce's scope determinations. 28 U.S.C. § 1581(c);

19 U.S.C. § 1516a(a)(2)(B)(vi). TRI bears the burden of proving that these avenues were either unavailable or manifestly inadequate to address its claims. TRI has not met that burden.

### A

To the extent that TRI challenges Customs' factual determination that the citric acid originated in China, we agree with the Trade Court that TRI "failed to establish that its claims challenging [Customs'] application of the *Citric Acid Orders* . . . may not properly be subject of a Customs protest and judicial review pursuant to 28 U.S.C. § 1581(a)." *Decision*, 433 F. Supp. 3d at 1341.

Protests are the typical avenue for addressing factual or procedural issues in Customs determinations. *See* 19 U.S.C. § 1514(a) (noting that "any clerical error, mistake of fact, or other inadvertence" in a "liquidation" or decision regarding "rate and amount of duties chargeable" "shall be final . . . unless a protest is filed" or judicial review is obtained); *Xerox Corp. v. United States*, 289 F.3d 792, 794 (Fed. Cir. 2002) (noting that "findings of Customs as to the classification and rate and amount of duties chargeable are protestable to Customs under 19 U.S.C. § 1514(a)(2)" and that "[d]enial of protests are reviewable by the Court of International Trade [under] 28 U.S.C. § 1581(a)" (quotation marks omitted)).

At root, TRI contests the factual determination that the citric acid originated in China. TRI argues that there is no evidence regarding the citric acid's origin, and that Customs therefore erred in determining the acid to be from China. *See, e.g.*, *Decision*, 433 F. Supp. 3d at 1339 ("TRI asserts [that] Customs maintained an 'unsupported belief' as to country of origin.") (citation omitted); Appellant's Br. 34–35. This argument should be made through a Customs protest. "[W]here the scope of a duty order is unambiguous and undisputed, and the goods clearly do not fall within the scope of the order, Customs' misapplication of the duty

order is a protestable decision reviewable by the [Trade Court] under § 1581(a)." *Sunpreme I*, 892 F.3d at 1192 (citation omitted); *see also* Appellant's Br. 3 (noting that one of the issues before the Trade Court was Customs' assessment of duties on TRI's entries of citric acid pursuant to "unambiguous" orders) (emphasis in original).

TRI also argues that a protest of Customs' factual determinations was unavailable or inadequate because TRI did not have notice that Customs made any factual findings regarding country of origin. This argument is untenable considering Customs' October 3, 2018 email, which stated that Customs "believe[s] the Citric Acid is of Chinese origin and subject to antidumping and countervailing duties," *Decision*, 433 F. Supp. at 1334–35 (citation omitted), and Customs' October 24, 2018, email informing TRI that the citric acid was not substantially transformed, *id.* at 1335. Customs made a factual determination that the hydrous citric acid originated in China and notified TRI accordingly.

TRI "offers no persuasive rationale as to why a protest proceeding is unavailable—indeed, it cannot, given its lodging of two Customs protests." *Id.* at 1342. We agree that the Trade Court does not have residual jurisdiction under § 1581(i) to address these factual and procedural arguments.

B

To the extent that TRI challenges Customs' use of the substantial transformation test, we agree with the Trade Court that "TRI has also failed to establish that it could not have challenged Customs' country of origin [determination] by requesting a scope ruling from Commerce and, if necessary, judicial review pursuant to 28 U.S.C. § 1581(c)." *Id.* at 1343.

TRI claims that Customs' application of the substantial transformation test interpreted the scope of the origin term "from the People's Republic of China" in the *Citric Acid*

*Orders* to include TRI's citric acid entries, Reply Br. 18; J.A. 56–57, and TRI seeks relief reversing this determination, *see* J.A. 59–60 (requesting that the entries be liquidated "without antidumping and countervailing duties on TRI's citric acid from India"). "[T]he proper remedy [for such arguments] is for the importer to seek a scope inquiry from Commerce, the result of which may subsequently be challenged before the [Trade Court]." *Sunpreme I*, 892 F.3d at 1193; *see also Bell Supply Co. v. United States*, 888 F.3d 1222, 1229 (Fed. Cir. 2018) (holding that application of the substantial transformation test is an appropriate part of scope determinations).

Attempting to recast its arguments as directed to something other than the scope of the *Citric Acid Orders*, TRI contends that Customs acted outside its authority by determining that TRI's imports were subject to the Orders. *See* J.A. 54–57. But we held in *Sunpreme I* that recasting a scope dispute as a challenge to an alleged ultra vires action does not create § 1581(i) jurisdiction. *See Sunpreme I*, 892 F.3d at 1193 ("Sunpreme's characterization of its appeal as challenging Customs' allegedly ultra vires action is unavailing. '[A] party may not expand a court's jurisdiction by creative pleading.' . . . Instead, 'we look to the true nature of the action in the district court in determining jurisdiction of the appeal.'") (*quoting Norsk*, 472 F.3d at 1355 (Fed. Cir. 2006)). Here, TRI contests the application of the *Citric Acid Orders* to its entries and seeks a determination that its entries should be liquidated as not within the scope of the orders. *See* J.A. 59–60. This is "the very relief associated with a scope ruling," so "[t]he appropriate remedy for this type of claim is to request a scope ruling from Commerce." *Sunpreme I*, 892 F.3d at 1193.

Moreover, we held in *Sunpreme III* that Customs does have authority to determine in the first instance whether imports are covered by such orders. *See Sunpreme III*, 946 F.3d at 1317 ("Customs has a statutory responsibility to fix the amount of duty owed on imported goods. *See* 19 U.S.C.

§ 1500(c). As part of that responsibility, Customs is both empowered and obligated to determine in the first instance whether goods are subject to existing antidumping or countervailing duty orders."). In other words, under the *Sunpreme* framework, Customs makes initial determinations regarding whether goods are subject to an order, even if there is some ambiguity involved in the order's application. *Id.* at 1317–18. If an importer disagrees with Customs' determination, "the proper remedy is for the importer to seek a scope inquiry from Commerce, the result of which may subsequently be challenged before the [Trade Court]." *Sunpreme I*, 892 F.3d at 1193.

The *Sunpreme* line of cases is applicable here—indeed, the Trade Court stayed this case awaiting our holding in *Sunpreme III*—but TRI makes a couple of unavailing attempts to distinguish the *Sunpreme* cases. For example, TRI argues that here it is contesting Customs' *anticircumvention* analysis rather than *scope* analysis. But Customs' determination centered on the substantial transformation test, *Decision*, 433 F. Supp. at 1335; J.A. 84, which indicates a scope determination rather than an anticircumvention analysis, *see Bell Supply*, 888 F.3d at 1229 (noting that the "substantial transformation analysis to determine country of origin" comes "before resorting to the circumvention inquiry.").

TRI also argues that seeking a scope ruling would have been futile here because there would not have been time for Commerce to conduct that analysis before liquidation. But this argument makes many assumptions, including that Customs would not have suspended liquidation and that Commerce would not have promptly initiated a scope proceeding. The burden is on TRI to demonstrate that § 1581(c) jurisdiction is unavailable or manifestly inadequate, and hypotheticals are not enough to carry that burden. *See Chemsol, LLC v. United States*, 755 F.3d 1345, 1355 (Fed. Cir. 2014) (noting that mere belief that a plaintiff has no adequate remedy under another subsection of

§ 1581 is not enough to allow use of residual jurisdiction under § 1581(i)).

TRI has not carried its burden of proving that a scope determination was unavailable or manifestly inadequate, so we agree that the Trade Court does not have residual jurisdiction under § 1581(i) to address TRI's arguments.

### III

We have considered TRI's other arguments and find them unpersuasive. Because TRI has not demonstrated that another subsection of § 1581 was unavailable or manifestly inadequate, TRI cannot bring its claims under § 1581(i) residual jurisdiction. We therefore affirm the Trade Court's dismissal for lack of jurisdiction.

**AFFIRMED**